## Wiser et al. *versus* Allen et al.

1. In ejectment the plaintiffs claimed the land in dispute as the heirs of W., who in his lifetime held title thereto by virtue of a deed from P. The defendants set up a resulting trust, alleging that the land was purchased with the money of the son of W. and the title taken in the name of the father. P., under instructions from W. before his death had the deed corrected and the title made to the son. The original deed from P. to W. was of record. The court held that this was a valid surrender of title by W. to P., and that she had the power and right to execute a deed to the son. *Held,* that this was error.

2. The Statute of Frauds does not prevent a declaration of trust from being made by parol and it follows that such trust may also be defeated or rebutted by parol.

3. The plaintiffs in above ejectment offered evidence that the son agreed to take from his father, and actually did take, a conveyance of other land as a consideration for his equity in the property in controversy and also evidence tending to rebut the presumption of a trust, which the court rejected. *Held,* that the evidence should have been admitted.

November 27th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Crawford county :* Of October and November Term 1879, No. 80.

Ejectment by Herman S. Wiser and others against James Allen and M. S. Collin, for eighteen acres of land in Conneaut township, Crawford county.

On the 14th of February 1865, Eli B. Wiser purchased of Diadema Potter, now Diadema Perkins, the land in dispute, for his son, Marcus L. Wiser, who was at that time in the army, and who had sent him the money to pay for the land. He first ordered the deed made to Marcus L., but afterwards had it made to himself, saying his son might not like the land when he returned home, and he might buy it and save the making of a new deed. Eli B. Wiser moved upon the land and resided there until the time of his death, which occurred on or about the last day of November 1865.

Marcus L. Wiser returned from the army about the 1st of June 1865. Soon after his return, he called Diadema Potter into the house where Eli B. Wiser, who was then an invalid, was, who told her to take the deed back to Esquire Hughes and have the name Marcus L. put in instead of Eli B. They told her the boundaries were not correct, and to take it and make out a new deed to Marcus L. Wiser. Diadema Potter took the deed to Hughes and directed him to make out a new deed. Hughes said the description was correct. Diadema Potter reported to the Wisers as she came home, and then went back to the justice and told him to make out a deed to Marcus L. Wiser, which he wrote, but which was not acknowledged that day because the justice's commission had not

come.   The first deed was left with Hughes and also the new deed ready to be acknowledged.

The matter stood in this way until in November 1865.   A few days before the death of Eli B. Wiser, Diadema Potter was at Wiser's, when he again, in presence of the family and his two brothers, requested her to make the deed to Marcus L. Wiser.   In pursuance of that request, she went to Hughes's office, signed and acknowledged the deed to Marcus L. Wiser, and directed the justice to deliver it to him.   It was delivered to him, and he (Marcus L. Wiser) showed it to Diadema Perkins and her husband, George Perkins.

The first deed had a government stamp upon it, and it was left with Hughes to transfer the stamp, at his suggestion, to the new deed.   Diadema afterwards called upon Hughes for the old deed, which she had left there.   Hughes told her she had taken it away.   He looked for it, but did not find it.   She demanded it at two different times, the last time in the presence of a witness. The old deed was afterwards obtained from Hughes and entered of record on the 11th day of December 1866.

After the death of Eli B. Wiser, Marcus L. Wiser took possession of the land and farmed it, treated it as his own, though the widow and family continued to occupy the house and live upon the land, and on October 29th 1866, while so in possession, he sold and conveyed it to Enoch Palmer by deed of that date, recorded February 20th 1867.   Palmer took possession of the land, and on March 23d 1869, sold and conveyed the same to Allen, the defendant.   At the trial the evidence of Mrs. Diadema Perkins was offered.   Plaintiffs objected on the ground that she was the assignor of the thing in action, and E. B. Wiser, the assignee, was dead.   Evidence admitted.   (First assignment of error.)

Defendant offered the following testimony of Mrs. Perkins: "They said they saw her coming, and wanted her to come into the house.   Wiser tried then to get the deed and fetch it to him.   He said the boundaries were not right; for her to take the deed back to Squire Hughes, and have the name of Marcus put in instead of Eli B. Wiser."   Plaintiffs objected, for the reason that this deed places the legal title in Eli B. Wiser, and the defendant cannot prove a surrender by parol.   Evidence admitted.   (Second assignment.)

Defendants also offered to prove the contents of the deed made by Mrs. Perkins, and offered in evidence deed of Marcus L. Wiser to Enoch Palmer, dated October 24th 1866.

Plaintiffs objected to the contents of the deed going in evidence, for the reason, that the defendant has not made sufficient search for Marcus L. Wiser.   Evidence admitted.   (Fourth assignment.)

The court refused to admit the following offers of plaintiffs:

"To prove by Lewis and Lyman Clark, that upon the return of

[Wiser *v.* Allen.]

Marcus L. Wiser from the army, the legal title to the eighteen acres having been conveyed to Eli B. Wiser and the equitable title being in Marcus L. Wiser, that he agreed to take from Eli B. Wiser, and did take as a consideration for his equitable title in the eighteen acres, twenty acres of land in Pine township, and $200 in judgments of record against S. C. and Morgan Mattocks; that the consideration of the conveyance of the Pine township land, was the eighteen acres in question; that the legal and equitable title being by that transaction combined or joined in Eli B. Wiser, he had a perfect title to the eighteen acres discharged from the former trust, and that it could be surrendered only by deed.　Also to prove this by the declarations of Marcus and Eli B. Wiser, by the justice who acknowledged the deed for the twenty acres, to be followed by the deed of Eli B. Wiser to Marcus L. Wiser, for the twenty acres of land in Pine township." (Fifth assignment.)

"Also, the declarations of Marcus L. Wiser prior to the conveyance to Enoch Palmer, that an arrangement or agreement had been talked about between him and Eli B. Wiser, the decedent, by which he was to give a bond for the support of Eli B. Wiser and Elizabeth Wiser, the wife of Eli B. Wiser, a foolish sister, Amanda Wiser, and a minor son, William Wiser, until he was twenty-one years of age.　That upon giving that bond, he was to receive a deed for the eighteen acres in question.　That he declared that he had not given the bond; and that he would not give the bond, and would not support them for three such farms; and further, the declarations of Eli B. Wiser in the presence of Marcus L. Wiser, in relation to this same contract, that were made before the death of Eli B. Wiser; and that Marcus refused to comply with the agreement; that Eli B. Wiser, in his lifetime, if he gave directions to deliver the deed, did so upon condition of the giving of a bond by Marcus L. Wiser." (Sixth assignment.)

In the general charge, the court, inter alia, said:

"The next thing we have upon the subject by any of these parties was, that Eli became sick; and [upon a certain occasion he had the whole family, and had Miss Potter, come into the house, and the deed was got from the clock—I believe she said that was where it was kept—and she was instructed to make a new deed.] She says that Eli said, there was a mistake made in that deed, and to make a new deed for this land to Marcus Wiser; and that he was to give up the deed of Eli B. Wiser to Miss Potter for cancellation, for surrender, and she was to take the deed and have it changed.

"If we recollect the testimony of Squire Hughes, who was a justice of the peace of Crawford county in November 1865, some two or three weeks before Eli B. Wiser died, she took the deed to Hughes for the purpose of having a new deed made; she says they took the stamps off the old deed, and had them put upon the new

[Wiser *v.* Allen.]

one. This was done by or in the presence of Hughes. Because Squire Hughes was not commissioned at that time, and it was inconvenient to go to Bishop's to have the deed acknowledged, she was to wait a few days until Squire Hughes's commission came on. After his commission came, she did acknowledge the deed. She says she told him to deliver to Marcus the deed, and afterwards she saw the deed in Marcus's possession; that she saw the stamps on it which were the old stamps; that she recognized them, because they were cancelled by her initials. She afterwards went to Squire Hughes to get the old deed she had got from Eli B. Wiser. He said she had taken it away. She said no. He said she did; and he looked around among his papers and could not find it, and did not find it. She never saw it until she afterwards saw it in the recorder's office. Mr. Perkins testifies to about the same thing. We say to you, that transaction, if you believe the testimony of Diadema Potter, [the testimony of Mr. Hughes read by counsel, we now decide, does not contradict in any material point the testimony of Mrs. Potter. Some things he does not recollect positively. Some things he recollects and does not contradict her. Who took the deed, how the deed left Hughes's office, is not material. We say, that transaction that took place a few weeks prior to the death of Eli B. Wiser, was a surrender of the old deed; a valid surrender by Eli B. Wiser of his title to the equitable owner of the property; and she has a right to and did execute and deliver, or cause to be delivered, this deed to Marcus L. Wiser. And that the present defendant, Allen, who was the purchaser from Palmer, who himself was the purchaser from Marcus L. Wiser, received a good title.

"The evidence that has been offered by the plaintiffs' counsel, which we have ruled out, will be determined in another form, whether we are correct in ruling it out or not. We say it would not be relevant, and was not relevant, to divest the title of Marcus L. Wiser, which he derived about November 1865, from Miss Potter; and these plaintiffs, who are heirs-at-law of Eli B. Wiser, are not entitled to recover; their ancestor having surrendered the deed he once received as trustee of Marcus L. Wiser, to Miss Potter, for the purpose of having the trust carried into effect."]

Verdict for defendants, when plaintiffs took this writ and alleged, that the court erred as set forth in the above assignments, and in the portions of the general charge noted in brackets.

*F. P. Ray,* for plaintiffs in error.—A parol surrender, to be effective, must have the concomitants of a parol sale, and unaccompanied by exclusive possession, confers no title: Blakeslee *v.* Blakeslee, 10 Harris 237; Washabaugh *v.* Entriken, 10 Casey 74.

A complete title cannot be surrendered by parol: Purd. Dig.

[Wiser *v.* Allen.]

p. 724, sect. 2; Brown *v.* Bank of Chambersburg, 3 Barr 187; Goucher *v.* Martin, 9 Watts 106.    The destruction of an executed conveyance does not divest title: Rifener *v.* Bowman, 3 P. F. Smith 313; Cravener *v.* Bowser, 4 Barr 259.

The evidence of the acceptance of other considerations than the eighteen acres by Marcus L. Wiser, ought to have been received.

The sixth specification of error was in relation to the second deed to Marcus.    The testimony included in that offer, in connection with the testimony of Hughes, certainly contradicted the statements of Mrs. Perkins, and the testimony was relevant and ought to have been admitted.    The testimony was explanatory of the second deed, or the preferred deed, which the plaintiffs allege was never delivered.

*Wm. R. Bole,* for defendants in error.—A contract for the purchase and sale of lands executed by delivery of a deed and receipt of bonds for the purchase-money may be rescinded as to the parties themselves by cancellation of the bonds and a delivery of the deed to the parties: Wiley *v.* Christ, 4 Watts 196; Goucher *v.* Martin, 9 Id. 106; Boyce *v.* McCullough, 3 W. & S. 429; Myers *v.* Myers, 1 Casey 100; Barncord *v.* Kuhn, 12 Id. 383.

After Marcus L. Wiser had conveyed away this title to E. Palmer for a good and valuable consideration, neither Eli B. Wiser nor his heirs could be allowed to question the title of Palmer.    It was then too late for them to set up any secret equities or collateral agreements among themselves against Palmer and those claiming under him.    As against Palmer and those claiming under him, they are estopped from now setting up this deed.    The declarations of Marcus L. Wiser were certainly not evidence, nor were general conversations of Eli B. Wiser and his family in relation to family arrangements to affect the defendants in this case.    Eli B. Wiser, by causing the deed for the land in question to be executed and delivered to his son, thereby invested the son with the power of disposing of the land, which has been done.    If any loss has accrued therefore in this case it must fall upon him who occasioned it, and not upon innocent third parties.    The matters alleged in the fifth assignment of error were not competent evidence, because, if true, the plaintiffs were estopped from setting them up.

Mr. Justice GORDON delivered the opinion of the court, January 5th 1880.

The plaintiffs claim the land in dispute as heirs of Eli B. Wiser, who, in his lifetime, had title thereto by virtue of a deed from Diadema Perkins, dated February 14th 1865.    The defendants, on the other hand, set up a resulting trust in Marcus L. Wiser, under whom they claim, which came about in this wise: Marcus, who was a soldier in the war of the rebellion, sent home money to his

11 NORRIS—21

[Wiser *v.* Allen.]

father, Eli B. Wiser, with instructions to invest it in land.   With this money the said Eli B. bought the land in controversy, but took the deed in his own name.   Of course, under these circumstances, the father was but a trustee for the son, and he, the son, might have, by action or entry, enforced this trust at any time within the statutory period.   So the defendants, if they entered within that period, could defend on the ground of their possession : Clark *v.* Trindle, 2 P. F. Smith 492.   It follows, if the defendants can stand on this resulting trust, if they are not barred by the Act of April 22d 1856, then the deed of Mrs. Perkins to Marcus L. Wiser is of little or no account, for their equitable title is a suffi-cient defence.   If, however, they have no other dependence than this deed, then truly they are leaning upon a broken staff, for their vendor had no sufficient authority for the execution of such an instrument.   She did not profess to act as attorney in fact of Eli B. Wiser, and her deed, previously made to him, had divested her of all title, and she had, therefore, nothing to convey to Marcus. Even had she obtained that deed from Esquire Hughes, as she was instructed to do, and destroyed it, or, for that matter, had Eli destroyed it himself, this would not have reinvested her with the title.   As was said by Mr. Justice COULTER, in Cravener *v.* Bowser, 4 Barr 259, no lawyer would pretend that a legal estate, after it had vested by deed, could be retransferred to the vendor by a destruction of the deed.

But in this case the deed was not destroyed, but was put on record, so that there is nothing left for discussion but the resulting trust.   Therefore, the court erred in holding that there was a valid surrender, by Eli B. Wiser, of his title, to Mrs. Perkins, and that she had the power and right to execute a deed to Marcus.

Now as to the resulting trust : It was held as early as Gregory's Lessee *v.* Setter, 1 Dal. 193, and afterwards in German *v.* Gab-bald, 3 Binn. 302, that the Statute of Frauds and Perjuries does not prevent a declaration of trust from being made by parol, and it would necessarily follow that such trust may also be rebutted or defeated by parol : Hays *v.* Quay, 18 P. F. Smith 263.   Such being the case, the court ought to have admitted the offer of evidence covered by the plaintiff's fifth assignment; for if Marcus agreed to take from his father, and actually did take, a conveyance of other land, or anything else of value, as a consideration for his equity in the property in controversy, that was an end of the alleged trust. So, what was offered to be proved by Herman L. Wiser and others, ought to have been admitted, for the proposed evidence tended to rebut the presumption of a trust.

There was nothing wrong in the admission of the testimony of Mrs. Perkins.   She had no interest in the question being tried, direct or contingent; so the case is not like that of Karns *v.* Tan-

[Wiser *v.* Allen.]

ner (16 P. F. Smith 297), where the witness offered was not only the lessor of the premises in dispute, but also one of the defendants. She would have been a witness before the Act of 1869; hence the proviso to that act does not affect her competency. Her deed to Eli B. Wiser was not questioned; both parties claimed under it, and her testimony but tended to prove a collateral agreement between the father and the son, in which she had no more interest than any other disinterested party.

The declarations of the widow of Eli B. Wiser, when in possession of the property, were properly admitted to show how she professed to hold. They were, of course, good for nothing else.

We observe nothing further in the case requiring comment.

The judgment is reversed, and a new venire ordered.